

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DR. CYNTHIA BROWNE,<br>  Petitioner,<br><br>vs.<br><br>LARLEE CONSTRUCTION, LLC,<br>and GRANT LARLEE<br>  Respondents.<br><br>―――――――――――――――<br><br>LARLEE CONSTRUCTION, LLC,<br>  Third-Party Petitioner<br><br>v.<br><br>QUALITY CONCRETE FINISHING OF<br>AIKEN, INC., AND B&K GRADING AND<br>PAVING, LLC,<br>  Third-Party Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   Civil Action No. 1:19-02862-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DISMISSING WITHOUT PREJUDICE IN PART
PETITIONER'S AND RESPONDENTS' MOTIONS TO COMPEL ARBITRATION,
AND DEEMING AS MOOT THIRD-PARTY RESPONDENT'S
MOTION FOR SUMMARY JUDGEMTN**

### I.  INTRODUCTION

Petitioner Dr Cynthia Browne (Browne) filed this case under the Federal Arbitration Act (FAA), 9 U.S.C. § 4, as a petition to compel arbitration as to Respondents Larlee Construction, LLC and Grant Larlee (Larlee).  Larlee thereafter sought to compel arbitration with

Third-Party Respondents Quality Concrete Finishing of Aiken, Inc. (Quality Concrete) and B&K Grading and Paving, LLC (B&K Grading) (collectively, the Subcontractors).

Pending before this Court are three motions: (1) Browne's motion to compel binding arbitration as to Larlee and the Subcontractors, (2) Larlee's motion to compel non-binding arbitration as to Browne and binding arbitration as to the Subcontractors, or, in the alternative, for summary judgment, and (3) Quality Concrete's motion for summary judgment. The Court has diversity jurisdiction over the matter under 28 U.S.C. § 1332.

Having considered the motions, the responses, the replies, the record, and the applicable law, the Court will, as detailed below, grant in part and dismiss without prejudice in part both Browne's and Larlee's motions to compel arbitration. And, Quality Concrete's motion for summary judgment will be rendered as moot.

## II.     FACTUAL AND PROCEDURAL HISTORY

"Browne . . . is . . . a resident of the State of Illinois." Petition ¶ 3. Larlee "is a South Carolina limited liability company with its principal place of business in South Carolina." Stipulated Facts ¶ 2.

"On or about September 13, 2016, [Browne] and [Larlee] entered into a contract (Contract) for the construction of a horse barn (Project or Browne Project) on a parcel of real estate owned by [Browne] in Aiken County, South Carolina." *Id.* ¶ 3. "The Contract provides, in relevant part, for the following:

> **Arbitration** This contract and any disagreements between the owner and contractor are subject to arbitration pursuant to S.C. Code Ann. § 15-48-10, [et.] seq. It is expressly [understood] and agreed that arbitration is a condition precedent to litigation and that civil litigation will not be pursued until the remedies provided for in the SC Arbitration Statute have been exhausted. Failure to pursue

>arbitration will be grounds for summary dismissal of any [lawsuit] brought by either party. Additionally, an arbitration panel will be selected pursuant to S.C. Code Ann. § 15-48-30. That section provides in pertinent part, "there shall be three arbitrators with one chosen by the party making the demand for arbitration, one chosen by the party against whom the demand is made and [the] third being chosen by those two chosen by the parties." S.C. Code Ann. § 15-48-30.

*Id.* ¶ 4.

Larlee "constructed the barn using . . . [Quality Concrete] and [B&K Grading]." *Id.* ¶ 5.

The identical Master Agreements between Larlee and the Subcontractors provide, in relevant part:

>Pursuant to SC Code § 15-48-10 et seq, certain provisions of this Agreement are subject to binding arbitration, as amended from time to time.
>
>* * * * *
>
>The Contractor and Subcontractor agree that this Subcontract is non-exclusive master agreement and that the contract may from time to time authorize the Subcontractor to perform certain construction services ("Work") for the Contractor pursuant to this Agreement but only upon the execution by the Contractor and Subcontractor of a work order ("Work Order") in a form attached hereto as Exhibit A.
>
>* * * * *
>
>With respect to the Work covered by this Subcontract and any individual Work Order, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contractor Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards the owner, and third parties as applicable, in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties.

Master Agreements (emphasis omitted). But, the "certain provisions of this Agreement [that] are subject to binding arbitration" are not detailed in the Subcontracts, no Work Order was attached

3

to the Master Agreements as Exhibit A, and there was no Work Order concerning the subcontractor's work on the Project.

As the Court noted above, "[a]fter work ceased on the [Project], [Browne] commenced an arbitration proceeding against [Larlee]." *Id.* ¶ 7. Larlee "joined the Subcontractors in the arbitration proceeding, making Third Party Claims against them and asking that they be bound by the results of the arbitration to the same extent as [Larlee] would be bound. *Id.* ¶ 8.

"After the issues were joined and three arbitrators had been selected with input from [Browne], [Larlee], and the Subcontractors, the arbitration panel held a preliminary conference with all the parties to identify issues that needed to be resolved and to establish a schedule." *Id.* ¶ 9. "As a result of objection to arbitral jurisdiction from [Larlee] and the Subcontractors, the parties submitted briefs regarding the issue of arbitral jurisdiction to the arbitration panel." *Id.* ¶ 10.

The arbitrators issued their Decision/Order Number 1, identifying two issues that need to be decided by the Court because it was unable to decide them: "(1) whether the [S]ubcontractors are required to participate in the arbitration and (2) whether the arbitration would be binding to all participants." *Id.* ¶ 12.

Browne filed its motion to compel binding arbitration as to all parties, Larlee filed a motion to compel non-binding arbitration as to Browne and binding arbitration as to the Subcontractors or, in the alternative, a motion for summary judgment, and Quality Concrete filed a motion for summary judgment. "To the extent all the parties will agree to arbitrate the matter, [B&K Grading] consents to the arbitration using the three-member arbitration panel which had previously been agreed upon by the parties." B&K Grading's Answer ¶ 22.

This Court, having been briefed on the relevant issues, is prepared to adjudicate the motions before the Court.

**III.    STANDARD OF REVIEW**

The FAA provides a federal district court with the authority to enforce an arbitration agreement by compelling parties to arbitrate their dispute. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

Section 2 of the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract," and it provides that the written agreements to arbitrate contained in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has noted a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The Fourth Circuit Court of Appeals recognized the FAA's strong federal policy favoring arbitration agreements in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), where the court stated, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id*. at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). Because "arbitration constitutes a more efficient dispute resolution process than litigation . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause

5

itself resolved in favor of arbitration.'" *Id.* at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)).

"[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (citation omitted) (internal quotation marks omitted). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).

**IV.   DISCUSSSION AND ANALYSIS**

   ***A. Whether the Contract between Browne and Larlee provides for binding or non-binding arbitration***

Both Browne and Larlee agree that the Contract contains an enforceable arbitration clause covering the disputes between them. The dispute between these two is whether any arbitration award will be binding or non-binding. Browne insists the arbitration agreement calls for binding arbitration while Larlee maintains it requires only non-binding arbitration. They ask the Court to determine which one is correct. The arbitrators have asked the Court to make the same decision because they are unable to do so.

But, the Court is of the firm opinion this question is premature. From the Court's review of the relevant caselaw, the question of whether an arbitration award is binding or non-binding comes at the confirm/vacate-the-award stage, which, of course, occurs after the arbitration has

occurred. *See, e.g. Dow Corning Corp. v. Safety National Cas. Corp.*, 335 F.3d 742 (8th Cir. 2003) (After the arbitration proceeding, the plaintiff filed a motion to vacate the award under the FAA.); *Orlando v. Interstate Container Corp.*, 100 F.3d 296 (3rd Cir. 1996) (After the arbitration proceeding, the court is asked to decide whether the award was binding.); *Rainwater v. National Home Ins. Co.*, 944 F.2d 190 (4th Cir. 1991) (After the arbitration proceeding, Defendant filed a petition for confirmation of the arbitration award.); *Dowling v. Home Buyers Warranty Corp.*, II, 428 S.E.2d 709 (S.C. 1993) (After the arbitration proceeding, the Court is asked to decide whether the arbitration was binding).

In fact, the Court is unaware of any binding caselaw in which a court was asked to decide whether the arbitration was binding or non-binding prior to the arbitration proceeding. And, although the arbitrators are, in fact, unable to decide whether any arbitration award they might decide upon is biding or non-binding, the Court is unable to fathom, and the parties have failed to say, why they would need to know this before deciding on any arbitration award. In fact, it does not appear they necessarily think this is something that needs to be decided. They just know that they are unable to do so.

Further, not only is the question here premature, but any decision on this question at this early stage would be an advisory opinion. This is so because, at present, there is no decision by the arbitrators for which the Court can decide whether it is binding.

Additionally, a decision as to whether an arbitration award is binding at this early stage might well serve as a deterrent in resolving the dispute between the parties. Besides, if the parties are pleased with the result of the arbitration, and agree to abide by it, then the question of whether arbitration is binding or non-binding will be moot.

To the extent one might argue they should not be required to participate in non-binding arbitration because it might be a futile exercise, inasmuch as a party will be able to reject the arbitrators award, "this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 322 (4th Cir. 2001).

Accordingly, the Court will grant both Browne's and Larlee's motions to compel arbitration. But, it will dismiss without prejudice the portions of the motions asking the Court to determine at this stage whether any award is binding or non-binding. They can make these arguments, if they wish to do so, at the confirmation/vacate-the award stage.

### B.     *Whether the Subcontractors will be compelled to arbitration*

Both Browne and Larlee seek to require the Subcontractors to participate in binding arbitration. The Court, however, has already stated that the question of whether the arbitration is binding or non-binding is premature. Nevertheless, Quality Concrete objects to arbitration altogether. As the Court has already noted, however, "To the extent all the parties will agree to arbitrate the matter, [B&K Grading] consents to the arbitration using the three-member arbitration panel which had previously been agreed upon by the parties." B&K Grading's Answer ¶ 22.

#### 1.     *Whether the "certain provisions of this Agreement" compels arbitration*

As the Court noted above, the Subcontractors signed the Master Agreements with Larlee.. But, as the Court has also already observed, the "certain provisions of this Agreement [that] are subject to binding arbitration" are not detailed in the Subcontracts, no Work Order was attached to the Subcontracts, and there was no Work Order concerning the Browne project.

8

Larlee argues that, because "our courts liberally favor alternative dispute resolution[.]" the Court should order arbitration inasmuch as, '[c]learly the intent of the document is to subject disputes between contractor and subcontractor to arbitration." Larlee's Motion at 10.

"Interpretation of a contract is governed by the objective manifestation of the parties' assent at the time the contract was made, rather than the subjective, after-the-fact meaning one party assigns to it." *N. Am. Rescue Prods., Inc. v. Richardson*, 769 S.E.2d 237, 241 (S.C. 2015). "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Ecclesiastes Production Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 502 (S.C. Ct. App. 2007).

"The primary test as to the character of a contract is the intention of the parties, such intention to be gathered from the whole scope and effect of the language used." *Barnacle Broad., Inc. v. Baker Broad., Inc*., 538 S.E.2d 672, 675 (S.C. Ct. App.2000). "Documents will be interpreted so as to give effect to all of their provisions, if practical." *Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime*, 494 S.E.2d 465, 468 (S.C. Ct. App.1997).

Thus, although it is true that courts favor alternative dispute resolution, it must be clear from the agreement that the parties agreed to arbitration. *See Wilson v. Willis*, 827 S.E.2d 167, 173 (S.C. 2019) ("Although arbitration is viewed favorably by the courts, it is predicated on an agreement to arbitrate because parties are waiving their fundamental right to access to the courts."). It is far from clear here, however, that the Subcontractors agreed to arbitration.

### 2. *Whether the Subcontractor's past conduct compels arbitration*

Larlee also contends the Subcontractors ought to be required to participate in arbitration in this matter because of their past conduct. According to Larlee, "there has been no attempt to correct [the Master Agreements] prior to or during the work performed by Quality Concrete on the

9

project, and Quality Concrete has accepted and completed dozens of jobs for Larlee during that time." Larlee's Reply at 11. But, the question regarding arbitration apparently never came up.

Larlee has failed to offer any legal authority in support of this argument, likely because there is none. Thus, the Court is unable to say that the Subcontractor's past conduct compels them to arbitration.

### 3. Whether, as non-signatories of the arbitration agreement between Browne and Larlee, the Subcontractors can be compelled to arbitration

It has been long-settled that "[t]he obligation and entitlement to arbitrate 'does not attach only to one who has personally signed the written arbitration provision.'" *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 20 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir.2000). "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co.*,206 F.3d at 416–17.

In *Int'l Paper*, the Fourth Circuit noted with approval that the Second Circuit has "recognized that five theories "'aris[ing] out of common law principles of contract and agency law' could provide a basis 'for binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.'" *Id* at 417 (quoting *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)).

#### a. Whether incorporation by reference or assumption compels arbitration

Browne maintains that, "under either incorporation by reference or assumption, the express language of the Master Agreements . . . provide[ ] this Court with an unequivocal basis to compel [the Subcontractors] to participate in the Browne/Larlee . . . arbitration proceeding." Browne's

10

Motion at 12. Similarly, Larlee argues that the Master Agreement provides that "the Subcontractor[s] shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties." Larlee's Motion at 10 (quoting the Master Agreement).

The Master Agreement does indeed provide that the

> Subcontractors shall assume all obligations, risks and responsibilities which Contractor has assumed towards the owner, and third parties as applicable, in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties.

Master Agreement. But, the reader will recall that the Master Agreement pertains only to the work that the Subcontractors did for the Larlee "upon the execution by the Contractor and Subcontractor of a work order ('Work Order') in a form attached hereto as Exhibit A." Master Agreement. But again, there was neither a Work Order attached to the Master Agreements nor a Work Order submitted for work on the Project.

Thus, inasmuch as there was no Work Order for the work the subcontractors did on the Browne project, the portion of the Master Agreement Browne and Larlee rely on here is inapplicable.

### b. *Whether estoppel compels arbitration*

Larlee argues Quality Concrete can be found to be bound by the arbitration agreement between Browne and Larlee because Quality Concrete received a direct benefit from the agreement between Browne and Larlee such that the benefits estoppel doctrine applies.

Under direct benefits estoppel, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Id.* at 418 (citation omitted) (internal quotation marks omitted). "In the arbitration

context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id*.

"To allow a plaintiff to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Id*. (citation omitted) (internal quotation marks omitted) (internal alteration marks omitted). But, for direct benefits estoppel to apply "the non-signatory have had actual knowledge of the contract containing the arbitration clause." *Noble Drilling Services, Inc. v. Certex USA, Inc*., 620 F.3d 469, 473 (5th Cir. 2010).

There can be no doubt Quality Concrete received a direct benefit from the agreement between Browne and Larlee, an agreement that contained a valid arbitration clause. There is, however, nothing in the record establishing whether Quality Concrete "had actual knowledge of the contract containing the arbitration clause." *Id*. And, neither party makes an argument, nor submits any evidence, as to this requirement. Thus, the Court is unable to say that direct benefits estoppel applies to the facts of this case.

### c. *Whether agency principles compel arbitration*

Browne argues that agency principles require Quality Concrete to participate in arbitration of the claims against it. Quality Concrete objects. But, neither party develops their arguments either for or against the application of agency law as it specifically relates to contractors and subcontractors. They also neglect to marshal any evidence on the issue. This failure is fatal to the Court's ability to render a well-considered opinion on this issue.

Given the dearth of argument and evidence on these issues, the Court will allow for further briefing on direct benefits estoppel and agency if Browne and Larlee still wish to pursue them.

V.     **CONCLUSION**

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Browne's and Larlee's motions to compel arbitration are **GRANTED IN PART AND DISMISSED WITHOUT PREJUDICE IN PART**. Specifically, Browne's and Larlee's motions are granted as to the requirement of arbitration between Browne and Larlee, but dismissed without prejudice as to the questions of whether it is binding or nonbinding and whether the subcontractors are required to participate in arbitration under principles of direct benefits estoppel and/or agency.

Inasmuch as Quality Concrete's arguments in its motion for summary judgment amount to its response in opposition to Browne's and Larlee's motions to compel, Quality Concrete's motion for summary judgment is **DEEMED AS MOOT**.

Each party will pay its own fees and costs.

If Browne and Larlee wish to further pursue their nonsignatory arguments, not later than March 31, 2022, they shall file a detailed joint brief and evidence in support of those arguments, Quality Concrete shall file a response by April 7, 2022, and Browne and Larlee shall file a joint reply, if deemed necessary, not later than April 14, 2022.

If, however, Browne and Larlee decide not to pursue these arguments any further, they shall file such notice with the Court not later than March 31, 2022.

**IT IS SO ORDERED.**

Signed this 24th day of March, 2022, in Columbia, South Carolina.

        /s/ Mary Geiger Lewis
        MARY GEIGER LEWIS
        UNITED STATES DISTRICT JUDGE